**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
JAMES KARAM,

                             Plaintiff,

              - v -                                  Civ. No. 1:13-CV-1018
                                                                                              (MAD/RFT)

COUNTY OF RENSSELAER, *et al.*,

                             Defendants.

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## DISCOVERY ORDER

     Recently, Karam served upon the Defendants a privilege log that listed a series of taped conversations. Apparently, prior to and throughout this litigation, Karam taped his conversations with various persons. On January 29, 2015, the Court issued a Discovery Order that discussed, *inter alia*, Karam's privilege log. Dkt. No. 71, Disc. Order, dated Jan. 29, 2015, at p. 2. Relevant to our discussion here, there are two taped conversations between Karam and officials of the United Public Services Union that he claims are protected by the work product doctrine. This Court opined that "[g]enerally, conversations between union officials and members of a union are not afforded any protection, but there may be an aspect of these conversations that conceivably could be work product." *Id*. The Court directed the parties to meet and confer to determine if indeed a work product privilege attached and if the parties could not resolve the issue, the Court would conduct an *in camera* review of the two tapes

to ascertain if they are shielded by the work product doctrine. *Id*.

Ostensibly, the parties were unable to resolve the matter because the two tapes were forwarded to the Court for an *in camera* review. The Court closely and assiduously listened to the two tapes – a minimum of three times – in order to understand the nature of the conversation in order to pronounce its status.

The work product doctrine establishes a zone of privacy in order to protect an attorney's mental impressions, opinions, and legal theories concerning litigation. This doctrine may be triggered when there is a prospect or anticipation of litigation. *NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 127-28 (N.D.N.Y. 2007) (citations omitted). "The fact that the materials [may] serve other functions apart from litigation does not mean that they should not be protected by the work product immunity if they reveal directly or indirectly the mental impressions or opinions of the attorney who prepared them." *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (citations and quotation marks omitted). On the other hand, even if documents ,which would have been created irrespective of the litigation, "might also help in the preparation for litigation, they do not qualify for protection because it could not fairly be said that they were created 'because of' actual or impending litigation." *Id*. (citations omitted).

Essentially, in order to assert the work-product doctrine, three elements must be established. The material must be (1) a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative. *BNP Paribas v. Bank of New York Trust Co., N.A.*, 2013 WL 2434686, at * (S.D.N.Y. June 5, 2013).

Two of these elements are obviously present. The tapes are tangible items and they were prepared by Karam, the party. The second element is much harder to define.

Here, these tapes are conversations between representatives of the United Public Service Union, which did not represent Karam. Karam is not a member of the Union, although his wife is a member. Moreover, the Union was not working as a representative of Karam's attorney because, at the moment of these conversations, Karam had not retained an attorney to represent him.[1] The primary purpose of the

---

[1] There is a split of authority as to whether an attorney needs to be involved for the work product doctrine to be invoked. "When a document is created because of the prospect of litigation, analyzing the likely outcome of that litigation, it does not lose protection under this formulation merely because it was created in order" with other decisions. *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998). Even though many courts within the Second Circuit state that the presence of a lawyer is not absolutely necessary for the work product doctrine to exist, *Wultz v. Bank of China Ltd.*, 2015 WL 363667, at *9 (S.D.N.Y. Jan. 21, 2015) (citations omitted), a principal element absent form Karam's discussions is that the Union was not acting on behalf of or at the direction of an attorney nor is there an obvious legal analysis of the outcome of the litigation. "[D]ocuments are not protected by the attorney work-product doctrine, because (though they may have been created because of the prospect of litigation) they are not the work product of an individual acting as the siblings' attorney." *Bice v. Robb*, 511 F. App'x 108, 110 (2d Cir. 2013)

(continued...)

conversation, however, was that the Union was filing a grievance on behalf of its members who were being precluded from donating sick leave hours to Karam, and the Union's strategy to promulgate the issue to the union members and the public at large. Yet, there were brief conversations about him filing an Article 78 proceeding, potentially with the aid of Union attorneys, and the possibility of a lawsuit. At best, the discussion could very well be a reporting by Union representatives as to what the Union was prepared to do that could minimally, albeit indirectly, benefit Karam. In any event, the Union was prepared to help him in any manner.

The Court cannot definitely say that Karam's practice of taping everyone who speaks with him automatically means that such tapes were being created because of an actual or impending litigation. *Adlman*, 134 F.3d 1202. Conversely, the Court cannot gainsay that the process of taping everyone was not meant for impending litigation. However, coordinating a media campaign or giving public relation advice, even if it bears on litigation, falls outside the ambit of the work product doctrine. *Gucci America Inc., v. Guess?, Inc.*, 271 F.R.D. 58, 78 (S.D.N.Y. 2010); *NXIVM v. O'Hara*, 241 F.R.D. at 142. It does appear that the Union was sharing with Karam its public relation strategy to assist him, mostly by publishing the matter through a couple

---

[1](...continued)
(citing, *inter alia*, *United States v. Adlman*, 134 F.3d at 1196 (emails between siblings considering their potential claims against another sibling were not work product). If the Court was to apply this standard, the work product doctrine would not stand.

of reporting vehicles. Assuming that the doctrine may have initially attached to these taped conversations, if the overall strategy was to disseminate information throughout the Union's membership and the public at large regarding Karam's plight with Rensselaer County, there was no intention of keeping the information in confidence, a hallmark of the immunity. *See Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 436 (S.D.N.Y. 2013). Based upon the consideration that this information was to be shared with others, it is not reasonable for Karam to have had any expectation that what was being discussed would maintain any legally recognized confidence. The work product doctrine is not absolute. Such protection, like any other privilege, can be waived and the determination of such a waiver depends on the circumstances. *United States v. Nobles*, 422 U.S. 225, 239-40 (1975). A voluntary disclosure of work product, for some or any inexplicable benefit, to a third party, may waive the privilege. *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 234-37 (2d Cir. 1993); *see also In re Grand Jury Proceedings*, 219 F.3d 175, 191 (2d Cir. 2000); *Strougo v. Bea Associates,* 199 F.R.D. 515, 522 (S.D.N.Y. 2001) (disclosing some of the information to nonparties constitutes a waiver). As illustration, when a party makes a strategic decision, no matter how broad and sweeping or limited, to disclose privileged information, a court can find an implied waiver. *In re Grand Jury Proceedings.* 219 F.3d at 190-92. Moreover, a party cannot partially disclose a privileged document nor selectively

waive the privilege and then expect it to remain a shield. *Id*. at 191. Thus, even if the tapes constitute work product, a waiver has occurred.[2]

For all of these reasons, the taped conversations between Union Representatives and Karam – tape 802_042 and 802_44 – are not protected by the work product doctrine and must be disclosed to the Defendants.

It is hereby Ordered that the Plaintiff retrieve the disk with these taped conversations from the Court's Chambers and then disclose them to the Defendants forthwith.

**IT IS SO ORDERED**.

February 10, 2015
Albany, New York

Randolph F. Treece
U.S. Magistrate Judge

---

[2] Additionally, the Court struggles with the legal reality that these conversations could conceivably constitute fact work production because the conversations do not appear to be essential to the preparation of Karam's case. *In re Grand Jury Subpoena, Dated July 6, 2005*, 510 F.3d 180, 184 (2d Cir. 2007). The mere mention of an Article 78 proceeding and the possibility of litigation without some legal analysis or strategy being involved, does not deserve to be cloaked by the work product doctrine.