**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**JAMES KARAM,**

                          **Plaintiff,**

  vs.                                                 **1:13-cv-01018
                                                             (MAD/DJS)**

**COUNTY OF RENSSELAER, NEW YORK; JACK
MAHAR, in his individual and official capacity as
Sheriff of Rensselaer County,**

                          **Defendants.**
_____

**APPEARANCES:**                                    **OF COUNSEL:**

**BOSMAN LAW OFFICE**                    **AJ BOSMAN, ESQ.**
3232 Seneca Turnpike                    **DANIEL W. FLYNN, ESQ.**
Suite 15
Canastota, New York 13032
Attorneys for Plaintiff

**BAILY, KELLEHER LAW FIRM**        **CRYSTAL R. PECK, ESQ.**
Pine West Plaza 5                            **JOHN W. BAILEY, ESQ.**
Suite 507
Washington Avenue Extension
Albany, New York 12205
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff James Karam commenced this action on August 20, 2013 asserting twenty-nine causes of action against eight named Defendants pursuant to New York Executive Law § 296 (the New York Human Rights Law ("NYHRL")), 42 U.S.C. §§ 1981, 1983, 1985, and 1986, the New York State Constitution, New York Civil Rights Law §§ 40-c and 79-n, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act of 1973, common law claims of prima facie tort, loss of consortium, and negligence, and for a writ of mandamus. *See* Dkt. No. 1. In a January 4,

2016 Memorandum-Decision and Order (the "January 4 Order") the Court partially granted Defendants' motion for summary judgment, dismissing all defendants except for Rensselaer County and Sheriff Jack Mahar ("Defendant Mahar"). *See* Dkt. No. 147. Plaintiff's remaining claims to be presented at trial sound in discrimination relating to the denial of his requests to use the sick leave donation program, and First Amendment retaliation for conversations involving alleged HIPAA violations. Currently before the Court are the parties' motions *in limine*.

## II. BACKGROUND

The Court assumes the parties' familiarity with the factual background of this case as laid out in the January 4 Order. *See id.* The Court conducted a final pre-trial conference on May 23, 2016 and discussed the issues presented in the parties motions *in limine*. Any pertinent facts or information from that conference will be incorporated in the discussion set forth below.

## III. DISCUSSION

### A. Standard

The main purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *see also Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). A court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds. *See Baxter Diagnostics, Inc. v. Novatek Med., Inc.*, No. 94 Civ. 5220, 1998 WL 665138, *3 (S.D.N.Y. Sept. 25, 1998). Courts considering a motion *in limine* may reserve decision until trial so that the motion is placed in the appropriate factual context. *See Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Group*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996). Alternatively, the court is "free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling" at trial as

2

"the case unfolds, particularly if the actual testimony differs from what was contained in the [movant's] proffer." *Luce*, 469 U.S. at 41–42.

**B.     Defendants' Motions**

*1. Collateral Estoppel*

"Under New York law, collateral estoppel gives conclusive effect to an administrative agency's determination where: (1) the issue sought to be precluded is identical to a material issue necessarily decided by the administrative agency; and (2) there was a full and fair opportunity to contest the issue." *Sloth v. Constellation Brands, Inc.*, 924 F. Supp. 2d 461, 471 (W.D.N.Y. 2013) (quotation omitted).

Defendants argue that the January 21, 2016 reserved decision from the Workers' Compensation Board ("Workers' Compensation Decision") should be given collateral estoppel effect as to Plaintiff's claims of emotional injury. In that decision, the Workers' Compensation Law Judge ("WCLJ") John Loughlin considered the issue of "whether [Plaintiff] suffered a compensable claim for a psychiatric injury based upon harassment and hostility relating to his Arabic descent." Dkt. No. 153-1 at 2. The WCLJ considered Plaintiff's testimony at several hearings, viewed several of the depositions taken for this case, the medical reports from Dr. Ovens, and a medical report from Dr. Robert Conciatori. *Id.* at 2-3. Ultimately, the WCLJ concluded that Plaintiff "was not subjected to any verbal abuse, harassment, or discrimination at work which resulted in any stress or psychiatric condition. Also, [he found] that [Plaintiff's] alleged work-related stress was no greater than that encountered in the normal work environment, and therefore, the claim is disallowed." *Id.* at 4.

The Workers' Compensation Decision identified the relevant standard for granting benefits as follows:

3

> Workers' Compensation Law § 2(7) states that the definition of an injury shall not include 'an injury which is solely mental and is based upon work-related stress if such mental injury is a direct consequence of a lawful personnel decision involving a disciplinary action, work evaluation, job transfer, demotion, or termination taken in good faith by the employer.' In addition, in order to constitute a viable claim for mental injury premised on work-related stress, 'the stress must be greater than that which usually occurs in the normal work environment.' (*see Matter of Charlotten v. New York State Police*, 286 AD2d 849 [2001]).

*Id.* at 3.

The question presented in the Workers' Compensation determination focused solely "on a claimant's ability to perform the duties of his or her employment." *Auqui v. Seven Thirty One Ltd. P'ship.*, 22 N.Y.3d 246, 256 (2013). In the instant action, the emotional damages element seeks to compensate Plaintiff for the total extent of the emotional harm caused by Defendants' allegedly unconstitutional actions rather than deciding whether harassment and hostility relating to Plaintiff's Arabic descent was the sole cause of his inability to perform the duties of his employment. *See id.* at 257 ("[T]he jury is charged with determining the broader question of plaintiff's total loss [in awarding damages to compensate for an injury], as opposed to the Workers' Compensation Board's narrower focus on the employee's ability to work"). The Court finds that the issue presented, and the standard for granting benefits in Workers' Compensation hearings, is sufficiently dissimilar to the issues and legal questions presented in this case that collateral estoppel should not apply. Moreover, the Workers' Compensation decision cited by Defendants was the second decision in that case and is currently under appeal. The first case found for Plaintiff, which was overturned on appeal. Accordingly, Defendants' first motion *in limine* is denied. *See Sloth*, 924 F. Supp. 2d at 471 ("[U]nder New York Law, even in cases where all of the elements of collateral estoppel have been satisfied, 'it lies within the discretion of

4

the trial court whether to apply the doctrine of collateral estoppel, and the doctrine need not be applied even if all of the prerequisites to the doctrine have been met") (quotations omitted).

### 2. *Discriminatory Comments Prior to August 20, 2010*

In the January 4 Order, the Court held that any discriminatory comments made prior to August 20, 2010 were barred by the statute of limitations from being considered as evidence of discrimination against Plaintiff. *See* Dkt. No. 147 at 9-15. Defendants' second motion *in limine* seeks to preclude any "testimony or evidence of actions or comments relating to [Plaintiff's] ethnicity that occurred prior to August 20, 2010." Dkt. No. 153 at 3. Plaintiff argues that the previous statements, while not allowed to prove his discrimination claim, should be allowed as background evidence to establish a motivation for discrimination.

The Supreme Court has held that a discriminatory act that occurred earlier than the expired statute of limitations, while not allowed as direct evidence of a constitutional violation, may nonetheless be introduced as "relevant background evidence in a proceeding in which the status of a current practice is at issue." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977). The Second Circuit has clarified that it is within the district court's discretion to allow such evidence, subject to the other rules of evidence. *See Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1211 (2d Cir. 1993) ("[The holding in *Evans*] obviously does not compel the admission of such evidence, but rather affords the trial court discretion to decide whether such evidence is admissible under the ordinary evidentiary standards of probity and prejudice").

Significantly, each of the cases cited by Plaintiff that allowed time-barred evidence to be introduced as background evidence involve the defendants' engaging in discriminatory conduct towards a general protected class of individuals, rather than previous specific events carried out solely against the plaintiff. *See Zubulake v. UBS Warburg LLC*, 382 F. Supp. 2d 536, 544

5

(S.D.N.Y. 2005) (allowing evidence of discriminatory comments made to a non-plaintiff female Asian employee and also allowing evidence that the employer had previously hired and promoted several female employees in action for sex discrimination); *Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097, 1102 (8th Cir. 1998), *abrogated on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228 ) (1989) (holding that evidence of employer's previous actions of excluding all black employees from its workforce and derogatory comments made toward black customers should have been allowed in case alleging racial discrimination).

Here, the time-barred acts of discrimination consist exclusively of discriminatory comments made toward Plaintiff. Plaintiff has failed to allege that Defendants created a workplace that was generally discriminatory toward an entire protected class, rather, the alleged discrimination was directed at Plaintiff individually. Without being used as background evidence to show a pattern of general hostility toward the protected class, the allowance of the pre- August 20, 2010 comments would only serve to prejudice Defendants and confuse the jury. It would be difficult, if not impossible, for a jury to categorically exclude these older comments directed specifically at Plaintiff from their consideration of whether Defendants engaged in discrimination against Plaintiff through post August 20, 2010 comments. Accordingly, Defendant's second motion *in limine* is granted. Any evidence of discriminatory comments made toward Plaintiff that occurred prior to August 20, 2010 is precluded. To the extent that the record contains evidence of discrimination that does not have a certain date attributed to it, such as the comment that Plaintiff was out feeding his camels or the time sheet referencing Plaintiff's department as the "Rat Squad," the Court reserves its ruling on this undated evidence so that it may be introduced if Plaintiff can lay a foundation that such comments were made after August 20, 2010.

### *3. Patrick Russo's Goatee Comment*

Defendants argue that Patrick Russo's comment that "Plaintiff should shave his goatee or he would be put back on the terrorist watch list" should be excluded as not probative or relevant. This argument is based on the principle that "[i]nferences of intentional discrimination may not be based on 'statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself[.]" *Ellis v. Provident Life & Acc. Ins. Co.*, 926 F. Supp. 417, 428 (S.D.N.Y. 1996) (quoting *Prince Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989)).

While Russo's statement cannot serve as the basis to establish that Defendant Mahar intentionally discriminated against Plaintiff, it may be used to show that the County of Rensselaer had a custom and policy of allowing its employees to act in a racially discriminatory manner. *See Lee v. City of Syracuse*, 446 Fed. Appx. 319, 322 (2d Cir. 2011) (summary order) (holding that evidence that an individually named defendant did not engage in unconstitutional acts did not shield the municipality from liability when there was evidence that other city officials did violate the plaintiff's rights, which may establish an unconstitutional municipal policy or custom). Accordingly, Russo's goatee comment is relevant to the issue of municipal liability on behalf of the Rensselaer County. To the extent that it is necessary, any potential prejudice to Defendant Mahar may be eliminated by a limiting instruction that Russo's statements can be used as evidence only as to whether the County had a municipal policy or custom that encouraged racial discrimination, and not to prove that Defendant Mahar personally engaged in discriminatory acts. Such a request for a limiting instruction should be made by the parties at the time the evidence is presented to the jury. Accordingly, Defendants' third motion *in limine* is denied.

### *4. Dr. Ovens Testimony as to Causation*

Defendants argue that Dr. Ovens' testimony as to the causation of Plaintiff's emotional harm is speculative and should be precluded. Dkt. No. 153 at 4. Federal Rule of Evidence 702

states that expert testimony is admissible if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Shea v. Long Island R.R. Co.*, No. 05 Civ. 9768, 2009 WL 1424115, *1 (S.D.N.Y. May 21, 2009) (quoting Fed. R. Evid. 702).[1]

Here, Dr. Ovens met with Plaintiff on several occasions in a therapeutic psychological capacity, which included reviewing a detailed report of Plaintiff's prior mental health history. *See* Dkt. Nos. 123, 169. Defendants have not presented any specific argument that Dr. Ovens did not rely upon or apply reliable principles of psychology to his determinations regarding Plaintiff's psychological injuries. Rather, Defendants argue that since "Dr. Ovens testified that he could not determine the degree to which [Plaintiff's] claim of ethnic discrimination factored into his overall diagnosis and Plaintiff's emotional well-being," that his testimony regarding Plaintiff's injuries relating to his emotional distress from the alleged discriminatory actions is wholly speculative and unsupported. The Court finds that Dr. Ovens treatment of Plaintiff as articulated in his deposition testimony satisfies the requirements of Rule 702. Specifically, he relied upon detailed examinations and numerous meetings with Plaintiff upon which he made his ultimate conclusions regarding Plaintiff's emotional health. To the extent that Defendants argue that Dr. Ovens' testimony should not provide the sole basis for the jury to award emotional damages to Plaintiff, such argument goes to the weight of Dr. Ovens testimony and not its admissibility. *See, e.g.*, *Yin Wang v. Yum! Brands, Inc.*, No. 05-CV-1783, 2008 WL 428669, *5 (E.D.N.Y. Feb. 14, 2008) (quoting *Bitici v. N.Y.C. Transit Auth.*, 245 A.D.2d 157, 157 (N.Y. App. Div. 1st Dep't 1997)) ("It

---

[1] The Court notes that any objection to Dr. Ovens' expert testimony should have been made by the dispositive motion deadline and not on the eve of trial in a motion *in limine*. *See* Dkt. No. 17 at 3. Nonetheless, the Court will consider Defendants' argument on this issue.

is within the province of the fact finder, not the . . . court, to determine the weight to be given to the examination and findings of plaintiff's doctor"). Any issues regarding the weight to be given to Dr. Ovens' diagnosis is an issue to be developed through cross-examination, and does not warrant precluding his testimony as to Plaintiff's injuries. Accordingly, Defendants' fourth motion *in limine* is denied.

### *5. Vibert Testimony*

Defendants argue that Ruth Vibert's testimony regarding the grant of sick leave donations to another officer should be precluded on the basis that she lacked personal knowledge on this topic. Dkt. No. 153 at 6. The Court reserves its decision on this issue to see what testimony is adduced at trial, if any, to lay the foundation for Vibert's testimony.

### *6. Disclosure of Documents Introduced in Other Cases*

Defendants take issue with Plaintiff's disclosure statement that he may introduce "[d]ocuments and transcripts of testimony recently provided to Plaintiff James Karam in connection with the *Hancock v. County of Rensselaer, eta.* and *Vibert v. County of Rensselaer, eta.* cases." Dtk. No. 153 at 7. Defendants assert that this disclosure is not particular or specific enough to provide notice as to what Plaintiff may actually introduce at trial. As neither party has indicated the actual evidence at issue, and the Court cannot speculate as to what may be adduced at trial, the Court reserves its decision on this motion. To the extent that any such evidence is produced at trial, the Court will rule on its admissibility after hearing the foundation that has been laid.

**C.     Plaintiff's Motions**

### *1. Issue in Redacted Motion*

9

The Court denies Plaintiff's first motion *in limine* for the reasons stated in the sealed portion of the May 23 pre-trial conference.

### *2. Undisclosed Evidence*

Plaintiff seeks to preclude any evidence that Defendants' failed to disclose during discovery. The motion does not indicate specific pieces of evidence that Plaintiff seeks to preclude, nor does it list what evidence was actually disclosed to Plaintiff during discovery. The Court is unaware at this time what evidence was or was not disclosed during discovery, and any order precluding such unidentified evidence would be premature. The Court reserves its decision on this motion and, if any such evidence is presented at trial, the Court will consider the foundation laid for that evidence and make a ruling on its admissibility at that time.

The Court reiterates to the parties that all discovery issues should have been dealt with by the Magistrate Judge or, to the extent the parties were dissatisfied with an order by the Magistrate Judge, appealed any such order prior to the commencement of trial. The Court will not re-examine these discovery disputes during the course of trial.

**D.     Remaining Issues**

Plaintiff's response to Defendants' motion *in limine* addressed two remaining issues: the Court's May 23, 2016 text order dismissing the member case, No. 14-CV-529, and Plaintiff's ninth cause of action in the instant case. *See* Dkt. No. 166 at 6. The Court clarifies that Plaintiff's Title VII cause of action asserted in the 14-CV-529 member case was deemed incorporated into the instant action in accordance with Magistrate Judge Treece's November 3, 2014 consolidation order and the discussions at the pre-trial conference. Accordingly, Plaintiff's Title VII claim based on his alleged disparate treatment surrounding the denial of his donated sick time, which

arises out of the same facts and is subject to substantially the same standards of proof as Plaintiff's § 1983 and NYHRL discrimination claims, remains pending in this case.

Plaintiff concedes that notice of this action was not served on the Attorney General in accordance with the requirements of N.Y. Civil Rights Law § 40-c. Therefore, Plaintiff's ninth cause of action is dismissed.

## IV. CONCLUSION

After carefully reviewing the parties' submissions and the applicable law, and for the above-stated reasons, the court hereby

**ORDERS** that Defendants' motions *in limine* are **GRANTED in part** and **DENIED in part** as set forth herein, and the Court further

**ORDERS** that Plaintiff's motions *in limine* are **GRANTED in part** and **DENIED in part** as set forth herein; and the Court further

**ORDERS** that Plaintiff's ninth cause of action pursuant to N.Y. Civil Rights Law § 40-c is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of the Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: May 25, 2016
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge